## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **OMERROR DAWSON, Individually, and**<br>**ALVIN CHEA, CEDRIC DENT,**<br>**MARK KIBBLE, CLAUDE MCKNIGHT,**<br>**AND DAVIDTHOMAS, collectively**<br>**"TAKE 6"** | :<br>:<br>:<br>:<br>: | **Case No. 7:22-cv-3175** |
| **Plaintiffs,** | :<br>: | **JURY TRIAL**<br>**DEMANDED** |
| **v.** | :<br>: | |
| **DAVID A. HARRIS, DAVID A. HARRIS d/b/a**<br>**PROGRESSIVE 86, JEFF ROBINSON d/b/a**<br>**SLIH SONGS, SONY ATV SOUNDS, LLC and**<br>**SONY MUSIC ENTERTAINMENT, INC.** | :<br>:<br>:<br>:<br>: | |
| **Defendants.** | :<br>: | |

## COMPLAINT
## FOR COPYRIGHT INFRINGEMENT,
## APPROPRIATION OF LIKENESS, CONVERSION AND
## <u>DECLARATORY RELIEF</u>

Plaintiffs Alvin Chea, Cedric Dent, Mark Kibble, Claude McKnight, and David

Thomas of the musical group, Take 6, and Omerror Dawson (collectively "Plaintiffs"),

through their attorneys, bring this action against Defendants David A. Harris, David A.

Harris d/b/a Progressive 86, Jeff Robinson d/b/a SLIH Songs, Sony ATV Sounds, LLC,

and Sony Music Entertainment Inc., and allege as follows:

## NATURE OF THE ACTION

This action for damages, declaratory relief and permanent injunctive relief is brought by Plaintiffs, pursuant to the Copyright Act and Copyright Revision Act, 17 U.S.C. §§101 *et seq*. (the "Copyright Act"), and other New York State common and statutory law, as further set forth herein.

## SUMMARY OF ACTION

1.    Take 6 is a musical group, comprised at all relevant times herein of the following individuals: Plaintiffs Alvin Chea, Cedric Dent, Mark Kibble, Claude McKnight and David Thomas ("Take 6"). Plaintiff Omerror Dawson ("Dawson") wrote the musical composition known as "Come Unto Me" ("Copyrighted Work"), specifically for Take 6. "Come Unto Me" was performed and released nationally by Take 6 on their album entitled, "So Much 2 Say" in 1990 with considerable commercial success. (The track to "Come Unto Me" can be found here: https://youtu.be/FdYYCUoKH9M).

2.    Dawson is the owner of all right, title, and interest in and to the Copyrighted Work, including the copyright therein, which was registered on December 26,1990 with the United States Copyright Office under Registration Number PA000498559. (A copy of the Registration for the Copyrighted Work from the United States Copyright Office is attached hereto as Exhibit A).

3.    Defendant David Harris copied substantial portions of the Copyrighted Work

to create and perform a new musical composition ("Infringing Composition") that was embodied on a sound recording titled, "Could've Been" ("Infringing Sound Recording").

4.      "Could've Been" is a song comprised of substantially similar compositional, rhythmic and lyrical elements to "Come Unto Me." (The track to "Could've Been" can be found here: https://youtu.be/zHZVV02oslw).

5.      The Infringing Composition and Infringing Sound Recording were released on Records entitled, "I Used To Know HER: The Prelude," and "I Used To Know HER."

6.      Defendants have profited greatly from the commercial success of the Infringing Composition and Infringing Sound Recording.

7.      Defendants have never sought the permission or consent of Plaintiffs for any use of "Come Unto Me," nor have they obtained a license for the same.

8.      Accordingly, Plaintiffs now bring this action against Defendants for Copyright Infringement and for violations of New York State Law and related causes of action, as more fully described herein.

## PARTIES

9.      Plaintiff  Omerror Dawson is a songwriter, whose primary place of business is Tennessee.

10.      At all relevant times, Plaintiffs Alvin Chea, Cedric Dent, Mark Kibble, Claude McKnight, and David Thomas, whose primary place of business is also in Tennessee,  have been members of the musical group "Take 6."

11.      Plaintiff  "Take 6" is an award-winning and renowned a capella singing group

3

whose brand and distinct vocals have been recognized in social media and regular appearances on television, in tabloids, blogs, movies, music-related magazines, award shows and talk shows over the past 30 (thirty) years.

12.     Upon information and belief, Defendant David A.Harris ("Harris") is a songwriter who conducts business in New York and California.

13.     Upon information and belief, Defendant David A. Harris d/b/a Progressive 86 ("Progressive") is a business owned by Harris with principal places of business in New York and California.

14.     Upon information and belief, Defendant Jeff Robinson d/b/a SLIH Songs ("SLIH") is a business with principal places of business in New York and California.

15.     Upon information and belief, Defendant Sony ATV Sounds, LLC, ("Sony") is a business with a principal place of business located at 424 Church St., Ste. 1200, Nashville, TN.

16.     Upon information and belief, Defendant Sony Music Entertainment ("Sony Music") is a Delaware corporation with its principal place of business in New York, New York.

### JURISDICTION AND VENUE

17.     This is a civil action against Defendants for their acts of copyright infringement in violation of the United States Copyright Act, 28 U.S.C. §§1331,1338(a) and1367 in that the controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. 101 *et seq.*), which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction pursuant to 28 U.S.C.§

1367(a) for all other claims asserted in this Complaint, including claims under New York statutory and common law because those claims are so closely related to the federal claims asserted herein as to form part of the same case and controversy.

18.    Personal jurisdiction over each of the Defendants is proper in this jurisdiction, among other reasons, on the ground that Defendants, Defendants' agents, and/or Defendants' personal representatives either: (a) maintain a principal place of business in New York or have a substantial presence in New York, with offices located in New York; or (b) regularly conduct business in the State of New York, including conducting such business through performing rights organizations located in New York and by entering into contracts that are consummated and/or performed in New York.

19.    Venue is proper in this District because the Defendants wrote and/or recorded part or all of the Infringing Work in this district, the Defendants transact business and/or may be found in this district, the injury suffered by Plaintiffs took place, in substantial part, in this district, and/or the Defendants distributed, marketed, offered for sale and sold the Infringing Work in this district.

20.    The amount in controversy in this matter is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

## STATEMENT OF FACTS

### *Plaintiffs' Creation and Ownership of Copyright*

21.    At all times relevant hereto, Plaintiff Dawson was engaged in, among other things, the business of music publishing and the commercial exploitation of her musical composition copyrights. Dawson entered into a performing rights license with the performing rights organization,  Broadcast Music, Inc. ("BMI") whereby BMI licensed

performances of Take6's musical compositions in the United States.  Collectively, Plaintiffs are considered a BMI affiliate. *See* Exhibit B.

22.    Dawson composed the song "Come Unto Me" after being inspired by Bible scriptures which she featured in the song. She approached the award-winning group Take 6 to bring her composition to life.  She registered the song with the United States Copyright Office under Registration Number PA000498559 within six months of publication.  *See* Exhibit A.

23.    "Come Unto Me" was released as Track number 7 on the album "So Much to Say" by Take 6 in 1990.

24.    The album, "So Much to Say," won the award for Best Contemporary Soul Gospel at the 33rd Grammy Awards in 1990, earning Take 6 their third Grammy.

25.    The group went on to perform the song "Come Unto Me" on tour, and periodically, throughout their decades-long musical career spanning over 30 (thirty) years.

26.    In the years since the initial release, Take 6 has realized considerable commercial success as a musical group and significant economic gain from the distribution of "Come Unto Me."  Defendants' unauthorized and repeated use of elements of the song in the Infringing Composition and Infringing Sound Recording has significantly diminished and diluted its commercial value.

### *The Defendants Release the Song "Could've Been"*

27.    Defendants first released the song, "Could've Been," worldwide on H.E.R.'s EP entitled, "I Used to Know HER: The Prelude," on or about August 3, 2018, and featured the song a second time on the compilation album entitled, "I Used to Know Her," on or about August 30, 2019 (collectively "the Records"). Track numbers four and thirteen, respectively, on the EP and album is the song titled, "Could've Been" (featuring Bryson Tiller). (Details of the "Could've Been" song are found on Universal Music Publishing Group's website, copies of which are attached hereto as Exhibit C).

28.    When "Could've Been" was released, it garnered significant critical acclaim, and yielded Defendants significant economic gain.

29.    "Could've Been" rose on the charts in 2018, both domestically and internationally,ultimately peaking at Number 31 on the New Zealand Hot Singles Chart (RMNZ), Number 76 on U.S. Billboard Hot 100, Number 39 on U.S. Billboard Hot R&B/Hip-Hop Songs, and Number 2 on U.S. Billboard Adult R&B Songs.

30.    The Single alone went 2x Platinum, certified by the Recording Industry Association of America, selling over 2,000,000 copies.

31.    In November of 2018, the artist H.E.R., who performed the song, embarked on a North American tour.

32.    In February of 2019, H.E.R. took the tour overseas where she embarked on a three-month long European Tour which also featured the song.

33.    "Could've Been" was nominated for the BET Award for Best Collaboration at the BET Awards 2019. The music video was also nominated for the MTV Video Music Award for Best R&B Video at the 2019 MTV Video Music Awards. In 2020, the song

received the prestigious accolade of nominations at the 62nd Grammy Awards including Best R&B Song and Best R&B Performance. (Documentation of the success of "Could've Been," as a result of incorporating "Come Unto Me," is attached hereto as Exhibit D).

34.    "Could've Been" is comprised of substantially similar compositional, rhythmic andlyrical elements to "Come Unto Me".

35.    The most notable point of similarity is that "Could've Been" has "sampled" substantial original segments from "Come Unto Me." The practice of sampling is the incorporation of a short segment of a musical recording into a new musical recording.

36.    Defendants' use of substantial original segments of Plaintiffs' musical composition without permission or license to do so from Plaintiffs, or attribution to Plaintiffs, was a direct infringement of Plaintiffs' Copyrighted Work.

37.    The portions copied amount to an improper or unlawful appropriation because a substantial similarity exists between the Defendants' work and the protectable elements of Plaintiffs' work.

## THE WRONGFUL CONDUCT OF THE DEFENDANTS

38.    From the date of release in 2018 and/or re-release in 2019 of the Infringing Composition and Infringing Sound Recording on the Records, Defendants have infringed the copyright in the Copyrighted Work by:

> (a) substantial actual copying and public performances, or authorizing copying and public performances;

8

(b) authorizing the making, distribution and sale of the Records; and

(c) participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of the Copyrighted Work in, and as part of, the Infringing Composition contained in the Infringing Sound Recording on the Records which have been commercially exploited on different platforms.

39. Upon information and belief, Defendants Progressive, SLIH, and Sony own and/or published, in whole or in part, the Infringing Composition "Could've Been," and commercially exploited the Infringing Composition in various ways.

40. Upon information and belief, Defendant Sony Music manufactures, distributes, markets and sells (and/or authorizes others to do so) the Infringing Sound Recording "Could've Been" through various mediums.

## COUNT 1
## COPYRIGHT INFRINGEMENT

41. Plaintiffs reallege each and every allegation in paragraphs 1 through 40 hereof as if fully set forth herein.

42. Defendant Harris inappropriately used Dawson's Copyrighted Work when he created the Infringing Composition and Infringing Sound Recording without permission or authorization from Dawson or any of the plaintiffs herein.

43. R&B artist Gabriella Wilson a/k/a "H.E.R." performed the Infringing Composition in a sound recording on the Record entitled "I Used to Know Her: The Prelude," (released on or about August 3, 2018) and "I Used to Know Her" (released on or about August 30, 2019). Defendants and/or their authorized agents licensed the Infringing

Composition and Infringing Sound Recording for digital download by issuing licenses to various entities including Napster, Wal-Mart, FullAudio Corp., Streamwaves, and MP3.com, among others, and further licensed the Infringing Composition and Infringing Sound Recording for use as cell phone ringtones. Each of these releases of "Could've Been" contains a sampled portion of the Composition "Come Unto Me," performed by Take 6, all without license or agreement from Dawson, Take 6 or any member thereof, and its inclusion greatly enhanced the musical and financial value of the Infringing Work.

44.    The commercial success of "Could've Been" has worked to the financial detriment of Plaintiffs in that it has diminished the value of the Copyrighted Work.

45.    Defendants engaged in improper conduct and copyright infringement, as more fully described herein, by directly or indirectly:

      (a)    creating the Infringing Work;

      (b)    performing the Infringing Work;

      (c)    releasing the Infringing Work;

      (d)    reproducing and distributing (including digital distribution of) the Infringing Work;

      (e)    issuing licensing to, and authorizing, others to reproduce and distribute (including digital distribution of) the Infringing Composition in the Infringing Sound Recording and records, and by making them available for digital download; and

      (f)    improperly paying and receiving fees and royalties generated by the commercial exploitation of the Copyrighted Work through its use in the

Infringing Composition and Infringing Sound Recording, including but not limited to income derived from Record sales, print editions of sheet music, synchronization fees audio-visual works, other licensing fees, performance royalties, digital distribution, and ringtones, among other sources known only to Defendants.

46.    Defendant Sony Music engaged in improper conduct and infringement, as more fully described herein, which resulted in Defendants' receiving and paying fees and royalties generated by the commercial exploitation of the Copyrighted Work through the Infringing Sound Recording of the Infringing Composition, including but not limited to the receipt of income from:

(a)    the sale of the Records manufactured, distributed, sold, licensed for sale or distribution and/or marketed by Defendants;

(b)    the synchronization fees for audio-visual works;

(c)    royalties and fees for the digital distribution (including digital download) of the Infringing Sound Recording of the Infringing Composition; and/or

(d)    other licensing fees for the use of the Infringing Composition and Infringing Sound Recording.

47.    Defendant Sony Music also has received substantial revenues (estimated to be millions of dollars) from a distribution agreement for the distribution of the Infringing Records, and received substantial revenues through the sale of the master recordings. Upon information and belief, Sony Music currently holds the monies so received. Plaintiff Dawson has received no compensation for such sales and/or transfers,

11

including royalties and/or copyright fees for the improper use of the Copyrighted Work, which infringement has not been remedied.

48.    Defendants knew or should have known that the Copyrighted Work was copied and distributed without authorization but still carried out such conduct.

49.    Defendants' forgoing conduct constitutes direct, contributory and/or vicarious copyright infringement.

50.    Plaintiffs have incurred significant economic damages as result of Defendants' conduct.

51.    Pursuant to 17 U.S. Code § 504, Plaintiff Dawson should be awarded actual and punitive damages and/or statutory damages for each infringement proven, plus costs, interest and attorneys' fees in an amount to be determined at the time of trial.

**COUNT 2**
**ACTION FOR DECLARATORY JUDGMENT OF**
**PLAINTIFFS' OWNERSHIP OF CLAIMED COPYRIGHT**
**(against all Defendants)**

52.    Plaintiff Omerror Dawson repeats and realleges each and every allegation set forth in Paragraphs 1 through 51 hereof as if fully set forth herein

53.    Plaintiff Dawson seeks a declaratory judgment that she is the owner of the Infringing Composition and Infringing Sound Recording on the grounds that such works are derivative of their copyright in "Come unto Me," and that Dawson has the exclusive rights to such derivative works.

54.    In the alternative, Plaintiff seeks a declaratory judgement as to her percentage of ownership in the new Infringing Composition and Infringing Sound Recording.

55.     Plaintiff further seeks a declaratory judgement that, as a result of her ownership referenced above, any and all assignments, transfers and licenses of the copyright in and to the new Infringing Composition and Infringing Sound Recording be declared null and void.

## COUNT 3
### ACCOUNTING
### (against all Defendants)

56.     Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 55 as if fully set forth herein.

57.     Due to the infringement and wrongful acts of Defendants, Plaintiffs are entitled to an accounting of income generated by the Copyrighted Work such that they may determine the revenues and profits rightfully belonging to them, which were wrongfully gained by Defendants.

58.     Due to the wrongful acts of the Defendants, Plaintiff Take 6 is entitled to an accounting from the Defendant of income generated by the Copyrighted Work such that Take 6 may determine the revenues and profits rightfully belonging to them from the use of their likeness.

## COUNT 4
### CONVERSION
### (against all Defendants)

59.     Plaintiff Dawson repeats and realleges each and every allegation set forth in paragraphs 1 through 58 as if fully set forth herein.

60.     Plaintiff owns a possessive property interest in the Copyrighted Work.

61.    Defendants did not request or receive authorization to use or distribute the Copyrighted Work.

62.    Defendants were aware or should have been aware that they did not receive authorization to use or distribute the Copyrighted Work.

63.    Defendant Harris inappropriately exercised control of the Copyrighted Work when he copied "Come Unto Me" and used it in the song "Could've Been" when writing "Could've Been."

64.    Defendants Progressive, SILH, Sony and Sony Music inappropriately exercised control of the song when they distributed portions of the work "Come Unto Me" embodied in the song "Could've Been" on the physical albums entitled "I Used to Know Her: The Prelude," and "I Used to Know Her" nationally and internationally for commercial purposes without authorization. Plaintiffs demanded that Defendants seek permission for the use of the Copyrighted Work or cease and desist their infringement thereof. (See copy of demand letter sent to Defendants' counsel on September 9, 2020, attached as Exhibit E).

65.    Defendants failed to seek authorization from Plaintiffs and continued to profit from the infringing use of the Copyrighted Work.

66.    Plaintiff seeks damages for all injuries, damages and losses resulting from Defendants' conversion.

## COUNT 5
## APPROPRIATION OF LIKENESS
### (against all Defendants)

67.     Plaintiff Take 6, collectively, and each of its members, individually, repeat and reallege each and every allegation set forth in Paragraphs 1  through 66 as if fully set forth herein.

68.     The song "Could've Been" features actual recordings of Take 6, comprised of the individual Plaintiffs' voices, taken directly from their work on "Come Unto Me".

69.     Plaintiffs' vocals in the song "Come unto Me" are reasonably and readily identified as those of the famous singing group Take 6.

70.     Defendant Harris has knowingly, and without Plaintiffs' prior consent, violated Plaintiffs' right of privacy by appropriating Plaintiffs' likeness when they used Plaintiffs' vocals in the song "Could've Been, in violation of N.Y. Civ. Rts. Law §§ 50 and 51.

71.     Defendant Harris used Plaintiffs' vocals and imitated their distinctive brand in the song "Could've Been" without Plaintiffs' knowledge or consent.

72.     Defendants and/or their authorized agents used or authorized the use of Plaintiffs' vocals and imitated their distinctive brand to be distributed nationally and internationally for commercial purposes without the consent of the Plaintiffs.

73.     The use of Plaintiffs' vocals and imitation of their distinctive brand was unauthorized and unlawful.

74.     The distinctive vocals of Plaintiffs have commercial value.

75.     Defendants derived economic and other advantage and/or benefit from the unauthorized use of Plaintiffs' Take 6 voices and likeness.

15

76.     Defendants misappropriated the voice and likeness of Take 6 without their consent.

77.     Defendants intended to realize financial benefit and/or realized such benefit by their unauthorized use of Plaintiffs' Take 6 voices and likeness, as the use of their voices and likeness brought a higher commercial value to the song "Could've Been" and to their overall commercial success.

78.     Defendants knew or should have known that they had no right, license or other permission to use Take 6's voices and likeness, and in so doing, caused Plaintiffs the damages more fully described herein.

79.     As a result of Defendants' unauthorized use of Plaintiffs' Take 6 likeness, to wit, their vocals, Plaintiffs, both individually, and collectively, as the Take 6 musical group, have sustained loss or injury including, but not limited to, depreciation of the value of their vocals in connection with prior and future musical commercial pursuits, and loss of the compensation which would otherwise have been due to them in connection with the song "Could've Been," including original and residual compensation.

80.     Additionally, Defendant Harris had actual or constructive knowledge that they were using Plaintiffs' Take 6 voices and likeness without any right, license or permission to do so in connection with the song "Could've Been." The Defendant took two master samples verbatim that are in "Come Unto Me" and used them when "Could've Been" was written. Accordingly, Defendant knowingly misappropriated Plaintiffs' likeness, to wit, their vocals, in disregard for Plaintiffs' rights and interests.

16

81.    Defendants' misappropriation of Plaintiffs' voice and likeness warrants the imposition of exemplary damages.

82.    Plaintiffs, individually, and as the Take 6 group, seek damages for all injuries, damages and losses resulting from Defendants' misappropriation of Take 6's voices and likeness including, but not limited to damages for the fair market value of Take 6's voices, damages for loss of goodwill, and damages for the value that use of Take 6's vocals brought to the song "Could've Been."

83.    As a result of the Defendants' knowing violation of N.Y. Civ. Rts. Law §§ 50 and 51, punitive damages should be granted to Plaintiffs.

## COUNT 6
### ACTION FOR PERMANENT INJUNCTION
### (against all Defendants)

84.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1through 83 hereof as if fully set forth herein.

85.    As described more fully above, the wrongful conduct of each of the Defendants entitles the Plaintiffs to compensatory, statutory, punitive and/or other damages in an amount to be determined at trial.

86.    The Infringing Composition and Infringing Sound Recording were released illegally and without right or justification, in violation of Dawson's copyright ownership interest in such.

87.    The Infringing Composition and Infringing Sound Recording were released without right or justification in violation of Plaintiff Take 6's right of privacy and Plaintiff Dawson's property rights.

88.    Accordingly, Plaintiffs request that a permanent injunction issue, ordering

that the Infringing Composition and Infringing Sound Recording and/or Defendants'

Records and/or digital releases in whatever form, be prohibited from being further

released, distributed, reprinted, performed, exploited or sold without the Plaintiffs'

consent, and that the Infringing Composition and/or Infringing Sound Recording and/or

Records, in whatever form already released, be immediately retrieved, impounded and

returned to the Plaintiffs for destruction, unless otherwise consented to by Plaintiffs.

## NATURE OF LIABILITY

89.    Plaintiffs repeat and reallege each and every allegation set forth in

paragraphs 1 through 88 hereof as if fully set forth herein.

90.    As co-infringers, Defendants are jointly and severally liable to Plaintiffs

for all amounts owed.

## TRIAL BY JURY

91.    Plaintiffs repeat and reallege each and every allegation set forth in

paragraphs 1 through 90 hereof as if fully set forth herein.

92.    Plaintiffs hereby request a trial by jury on all issues wherein trial by jury is

permissible.

## PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFFS** demand judgment as follows:

a.      That Defendants be found liable for direct, contributory and/or vicarious copyright   infringement as proven at trial;

b.      That Defendants be found liable for appropriation of likeness as proven at trial;

c.       That Defendants be ordered to submit to an accounting so that all gains, sales, profits and advantages derived by Defendants from each of their acts, may be determined;

d.      That Defendants be found liable for willful copyright infringement for each separate act of infringement and that fines or penalties be assessed against Defendants for each act;

e.      That Defendants be found liable for willful appropriation of likeness for each separate act of wrongful appropriation;

f.      That for each such act of copyright infringement, and appropriation of likeness, Defendants be ordered to pay damages to Plaintiffs:

g.      Such damages as Plaintiffs have sustained in consequence of Defendants' infringement of said copyrights, appropriation of likeness including, to the extent available, punitive damages in an amount to be determined, and for Defendants to account for, and pay to, Plaintiffs all gains, profits and advantage derived by Defendants from their infringement of Plaintiffs' copyright, the total amount to be determined at a trial of this action, and/or such damages as shall

19

appear proper within the provisions of the Copyright Statutes or in New York Law;

h.      In the event that the Plaintiffs' actual damages, including Defendants' profits are less than One Hundred Fifty Thousand Dollars ($150,000) for each infringement and Defendants are found to have willfully infringed, that Plaintiffs, in the discretion of the Court, be awarded statutory damages in the amount of the One Hundred Fifty Thousand Dollars ($150,000) for each infringement pursuant to theprovisions of 17 U.S.C. § 504(c)(2);

i.      In the event that Defendants are not found to have willfully infringed and Plaintiffs' actual damages, including Defendants' profits, are less than Thirty Thousand ($30,000) per infringement, that Plaintiffs, in the discretion of the Court be awarded statutory damages in the amount of Thirty Thousand Dollars ($30,000) for each infringement pursuant to the provisions of 17 U.S.C. § 504(c)(1);

j.      That pursuant to 17 U.S.C. § 504(c)(2), Defendants, their agents, employees and servants be permanently enjoined from infringing said copyrights of Plaintiffs in any manner, including from distributing copies and making Records of the Infringing Composition and/or Infringing Sound Recording and from publishing, selling, marketing or otherwise disposing of any copies of the Records or any other devices upon which Plaintiffs' unlicensed musical compositions, including "Come Unto Me," are embodied, and from licensing and contributing to or participating in and furthering any infringing acts;

k.    That pursuant to Defendants' violations of New York Civil Rights Law Section 51, Defendants, their agents and servants, be permanently enjoined from appropriating the likeness of Plaintiffs Take 6 in any manner, including from distributing copies and making Records of the Infringing Composition and/or Infringing Sound Recording that contain Plaintiffs Take 6's likeness and from publishing, selling, marketing or otherwise disposing of any copies of the Records or any other devices upon which Plaintiffs' unlicensed use of Plaintiffs Take 6's likeness embodied on "Come Unto Me," and from licensing and contributing to or participating in and furthering any appropriating acts;

l.    That all amounts received by Defendants from the date of filing of this suit from the exploitation of the Infringing Composition and Infringing Sound Recordings be placed in an escrow account pending the outcome of this litigation, and that such amounts be awarded to Plaintiffs at the conclusion of this action;

m.    That pursuant to 17 U.S.C. § 503, and unless otherwise consented to by Plaintiffs', Defendants be required to deliver to be impounded, and for destruction, all infringing Records, copies, recordings and all plates, molds, matrices, and other means of any kind for making infringing copies, recordings and/or Infringing Sound Recordings and other infringing materials in their possession and/or under their control, and that the Infringing Composition and Infringing Recording and Records, in whatever form, be prohibited from being further released, reprinted, preformed or sold, without the Plaintiffs consent;

n.      That pursuant to 17 U.S.C. § 505, Defendants pay to the Plaintiffs the costs of this action and reasonable attorneys' fees to be allowed Plaintiffs by this Court;

o.      That the Court enter a Declaratory Judgment that the Plaintiffs own the copyright in the Infringing Composition and Infringing Sound Recording "Could've Been" and the masters of the Infringing Sound Recording, and are entitled to royalties based on such percentages or, in the alternative, that the Court declare Plaintiffs' ownership interest in such works and order appropriate payment based on such ownership interests;

p.      That Plaintiffs be awarded prejudgment interest, post-judgment interest, attorneys' fees and costs;

q.      That Plaintiffs be awarded trial by jury on all issues triable by jury;

r.      That Plaintiffs be awarded all relief to which they are justly entitled

Respectfully submitted this 18th day of April 2022.

By: */s/ Alan Neigher*
Alan Neigher, Esq. - an2554
Law Offices of Alan Neigher
1804 Post Road East
Westport, CT 06880
Phone: 203/259-0599
Fax: 203/255-2570
Email: aneigher41@gmail.com

*Attorney for Plaintiff*

J. WALKER & ASSOCIATES, L.L.C.

James L. Walker, Jr.
*Pending Visiting Counsel Application*
Georgia Bar No. 260643
3421 Main Street | Suite A Atlanta, GA 30337
Phone: (770) 847-7363
jjwalker@walkerandassoc.com


C. Demille Willis
*Pending Visiting Counsel Application*
Georgia Bar No.: 154233
3421 Main Street | Suite A Atlanta, GA 30337
Phone: (770) 847-7363

dwillis@walkerandassoc.com


*Counsel for Plaintiffs*